IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AKSARBEN PROPERTY MANAGEMENT, LLC, | |
| Plaintiff, | 7:23CV5000 |
| v. | |
| VERTICAL FOCUS LLC; WENDY KREIS, and ASHLYNE SVOBODA, | MEMORANDUM AND ORDER |
| Defendants. | |

This matter is before the Court on defendants Vertical Focus LLC ("Vertical Focus"), Wendy Kreis ("Kreis"), and Ashlyne Svoboda's ("Svoboda" and collectively, the "defendants") Motion to Dismiss (Filing No. 2) plaintiff Aksarben Property Management, LLC's ("Aksarben") complaint (Filing No. 1-1) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the defendants' motion is granted as to Svoboda but otherwise denied.

I.  BACKGROUND[1]

Aksarben owns properties and manages others' properties for leasing throughout Nebraska. On November 28, 2022, Aksarben and Vertical Focus executed an Asset Purchase Agreement (the "Agreement") under which Aksarben agreed to purchase for $200,000 "all the rights and interests of" Vertical Focus's property management service—which operated under the trade name "Kearney Rental Pros." At the time the parties executed the Agreement, Vertical Focus was wholly owned by Kreis and Svoboda.

---

[1] For the purpose of considering the present motion brought under Rule 12(b)(6), the Court accepts the well-pleaded factual allegations in the complaint as true and views them in the light most favorable to the plaintiff. *See Rinne v. Camden County*, 65 F.4th 378, 383 (8th Cir. 2023).

Aksarben's allegations and the recitals in the Agreement indicate that a significant part of the purchased assets' value was derived from Vertical Focus's residential lease agreements entered into "on behalf of its property owners" as well as its "property management contracts with property owners." Aksarben's purchase entitled it to those contracts and lease agreements, as well as Vertical Focus's goodwill, books, records, lists, and files. The purchased files included electronic files with business information, some of which was contained in Vertical Focus's "Rent Manager" database. According to Aksarben, the Rent Manager files included information on Vertical Focus's "Owner Contracts, Lease Agreements, its managed properties, contact information for the property owners, and fee structures."

The Agreement provided that the sale would be final on the closing date of January 2, 2023, at which time Vertical Focus was to "deliver possession of the Purchased Assets included in the sale to" Aksarben, which would then "have ownership and possession of the Purchased Assets." Vertical Focus also represented and warranted it had "not otherwise contracted to sell, pledge, or mortgage all or part of the" assets purchased by Aksarben.

Other duties in the Agreement likewise require Vertical Focus to maintain the value of the sold business. First, the Agreement requires Vertical Focus to "encourage its former clients to continue doing business with" Aksarben. Second, the Agreement binds Vertical Focus to a "Covenant Not to Compete" which prohibits it from engaging—directly or indirectly—in a competing business or trade[2] "within a radius of 100 miles from [] Kearney, [Nebraska,] for a period of two (2) years."

On December 31, 2022, Kreis allegedly informed Aksarben that her company would no longer have access to the Rent Manager database. The closing date arrived just two

---

[2]The Agreement expressly prohibits Vertical Focus and its representatives from "providing property management services."

2

days later, at which time Aksarben paid Vertical Focus $200,000 and the purchase was finalized.

In March 2023, an Aksarben representative reportedly had a verbal altercation with a fellow real-estate businessperson, Gary Sorensen ("Sorensen"). Sorensen's company, GSGC Leasing, L.L.C. ("GSGC"), "owned and/or controlled" some of the properties for which Vertical Focus—and, after the sale, Aksarben—provided property management services. Sorensen had also been an investor in Vertical Focus prior to the Agreement's execution. Aksarben alleges that—two months after the sale—Sorensen became belligerent on a phone call with an Aksarben representative, who consequently relayed to him that Aksarben no longer desired to do business with GSGC. In response, "Sorensen threatened to destroy Aksarben's business."

Sorensen then reached out to Kreis and demanded she provide him Vertical Focus's client lists and electronic files. Despite the fact that those files had been purchased and transferred to Aksarben for its purportedly exclusive use, Vertical Focus had "retained a copy and/or access to the electronic files and the information contained in the Rent Manager database." With this access, Kreis complied with Sorensen's demands, providing him the information contained in the Rent Manager database, as well as other electronic files. Aksarben alleges that Kreis did so with the understanding that Sorensen planned "to use [the files] in the Rent Manager database to reach out to Aksarben's clients."

Through use of these files, some of which pertained to "clients and properties not related to Sorensen's properties," Sorensen emailed all of the owners and tenants listed in the Rent Manager files on March 12, 2023. In his email, "Sorensen claimed he was taking over the management of his properties and instructed all tenants and owners, including non-tenants of his, to pay their rent to him." Two days later, an Aksarben representative spoke with Kreis, who admitted to Sorensen's request and her subsequent transfer of the files. Suggesting some further sign of impropriety, Aksarben states that Sorensen later

3

hired Kreis's husband, and Svoboda's father, after Kreis transferred the Rent Manager files.³

Aksarben filed the present complaint against Vertical Focus, Kreis, and Svoboda in the District Court of Buffalo County, Nebraska, on April 17, 2023. Aksarben seeks relief under Nebraska and federal law, stating it has suffered a currently uncertain amount of damages in the form of "lost reputation and goodwill, lost competitive advantage, and lost business and profits" caused by the defendants' alleged misconduct. Namely, Aksarben alleges the defendants' actions resulted in a breach of contract entitling them to damages or, alternatively, recission. Aksarben also states that the alleged transfer of the Rent Manager files violates both Nebraska and federal trade-secrets laws. *See* Neb. Rev. Stat. § 87-501 *et seq.*; 18 U.S.C. § 1832 *et seq*.

The defendants subsequently removed (Filing No. 1) the action to this Court pursuant to 28 U.S.C. §§ 1331 and 1441. The Court has subject matter jurisdiction over the matter as Aksarben's claim under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1832 *et seq*., gives the Court jurisdiction under 28 U.S.C. § 1331, and the state claims are so related to Aksarben's DTSA claim that they "form part of the same case or controversy," 28 U.S.C. § 1367(a), and should be heard together through exercise of the Court's supplemental jurisdiction. *See*, *e.g.*, *West Point Auto & Truck Ctr., Inc. v. Klitz*, 492 F. Supp. 3d 936, 939-41 (D. Neb. 2020) (finding the Court had subject-matter jurisdiction over the plaintiff's DTSA claim as well as Nebraska trade-secrets claim and other state-law claims falling within the Court's supplemental jurisdiction).

---

³Aksarben has also filed a lawsuit against Sorensen in this Court for his involvement in the alleged scheme to obtain and utilize the Rent Manager information to harm Aksarben's business. *See Aksarben Prop. Mgmt., LLC v. Sorensen et al.*, Case No. 8:23CV151.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that Aksarben's complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement is necessary "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While Aksarben's complaint "does not need detailed factual allegations" to support its claims, *id.*, its pleadings must contain enough factual allegations for "the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (describing the "plausibility standard" to survive a motion to dismiss for failure to state a claim for relief).

Although the Court treats the pleading's facts as true, it is not required to accept "mere conclusory statements" or legal conclusions contained in Aksarben's complaint. Any such legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 678-79; *see Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 797 (8th Cir. 2021) (concluding the district court was not bound by the plaintiff's "pleading that the University terminated her on the basis of her sex" since it was a legal conclusion "not supported by the factual allegations in her complaint.").

### B. Aksarben's Claims against Svoboda

As an initial matter, the Court agrees with the defendants that "[n]early every mention of Svoboda in the Complaint is a legal conclusion unsupported by factual allegations." All of Aksarben's factual allegations regarding the improper transfer of Rent Manager files to Sorensen pertain to the alleged actions of Kreis; nowhere is there any indication that Svoboda, herself, is alleged to have been involved in these events. Therefore, Aksarben's claims are dismissed as to Svoboda as they are only supported by

5

conclusory allegations and, as such, cannot survive the defendants' Rule 12(b)(6) motion to dismiss.[4]

### C. Aksarben's Claims Against Vertical Focus and Kreis
#### 1. Breach-of-Contract Claims

To survive the defendants' motion to dismiss on its breach-of-contract claims, Aksarben's complaint "must plead . . . the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the [defendants'] duty." *United States v. Neb. Beef, Ltd.*, 901 F.3d 930, 934 (8th Cir. 2018) (quoting *Henriksen v. Gleason*, 643 N.W.2d 652, 658 (Neb. 2002)). "A breach is the nonperformance of a duty." *Id.* (quoting *Weber v. N. Loup River Pub. Power and Irrigation Dist.*, 854 N.W.2d 263, 271 (Neb. 2014)).

The defendants argue that Aksarben's complaint does not point to *any* duty placed on them in alleging a breach of the Agreement. A quick look at Aksarben's pleadings demonstrates otherwise—Aksarben identifies a variety of provisions in the Agreement in indicating the promises they believe were breached by Kreis's actions.

First, Aksarben states that the copying and transfer of the Rent Manager files violates the Agreement because "[p]ursuant to [that] Agreement, Defendant Vertical Focus provided Plaintiff Aksarben with its business assets, including the" Rent Manager files and promised it had not "otherwise contracted to sell, pledge, or mortgage" those assets. Aksarben also cites Vertical Focus's sale of its goodwill and the "covenant not to compete in a similar property management business within a 100-mile radius of Kearney for a period of two years from the Closing Date" to which Vertical Focus agreed. *See Unlimited Opportunity, Inc. v. Waadah*, 861 N.W.2d 437, 443 (Neb. 2015) (stating that "Nebraska

---

[4]Aside from their separate argument about Svoboda, the defendants generally fail to clearly distinguish between themselves in responding to Aksarben's claims. In reviewing their motion, the Court has, therefore, not drawn any further distinctions between the defendants that they have not made.

courts are generally more willing to uphold promises to refrain from competition made in the context of the sale of goodwill as a business asset" and such covenants are valid if reasonable). Its complaint discernably alleges the defendants breached these duties by transferring the electronic information "already purchased by Aksarben and no longer an asset of Vertical Focus," and by "[allowing] the competitor, along with Defendant Kreis' husband and the father of Defendant Svoboda, [to use] the electronic information to cause property owners to cancel their contracts and leases with" Aksarben.

These allegations, while thin in some respects, undermine the defendants' broad assertion that Aksarben "fails to point to a duty in the Agreement corresponding with [the] alleged breach." Because the defendants make no arguments urging dismissal of Aksarben's breach-of-contract claims beyond this assertion of total lack of notice, the Court denies their motion to dismiss Aksarben's breach of contract claims in their First and Second Causes of Action.

2.   **Misappropriation-of-Trade-Secrets Claims**

Next, the defendants argue Aksarben's complaint "cannot state a plausible misappropriation [of trade secrets] claim" as it contains only "threadbare factual allegations." More specifically, the defendants assert that Aksarben's complaint gives no notice of what it "claims is a protectable trade secret," "fails to allege any efforts it took to maintain the secrecy" of any trade secret, and does not adequately allege the defendants engaged in any type of misappropriation. The Court finds these arguments, which deny the mere existence of many of Aksarben's factual allegations, are overly reductive of Aksarben's complaint and are, therefore, unavailing.

Aksarben's complaint alleges the transfer of electronic files to Sorensen constitutes a misappropriation of trade secrets under Nebraska and federal law. See Neb. Rev. Stat. § 87-501 et seq.; 18 U.S.C. § 1832 et seq. The Nebraska Trade Secrets Act ("NTSA"), *see* Neb. Rev. Stat. § 87-501 *et seq.*, defines a trade secret as

> [I]nformation, including, but not limited to, a drawing, formula, pattern, compilation, program, device, method, technique, code, or process that:
>
> (a) Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Neb. Rev. Stat. § 87-502.

To allege a violation of the NTSA, Aksarben must not only plead the existence of such a trade secret, but also that the trade secret was misappropriated by the defendants. *See* Neb. Rev. Stat. § 87-504. Nebraska law defines misappropriation to include the "[d]isclosure or use of a trade secret without express or implied consent" where the person "used improper means to acquire knowledge of the trade secret" or "knew or had reason to know that [their] knowledge of the trade secret" was improperly acquired or utilized in some manner. Neb. Rev. Stat. § 87-502.[5]

First, though the complaint's language is not always clear, its factual allegations plausibly allege that Aksarben's trade-secrets claims are predicated on Kreis's disclosure of the Rent Manager files. Thus, Aksarben's allegations give sufficient notice that the information they are claiming to include trade secrets are those electronic files containing information related to "Owner Contracts, Lease Agreements, its managed properties, contact information for the property owners, and fee structures."

---

[5]The defendants do not distinguish in their arguments between the state and federal trade-secrets law because "[t]he definition of a trade secret under the NTSA [and the DTSA] is largely identical." *Yant Testing, Supply & Equip. Co. v. Lanker*, Case No. 8:20CV64, 2020 WL 1030724, at *5 (D. Neb. March 3, 2020). Thus, the Court finds the conclusions herein based on the NTSA to be equally applicable to the DTSA claims for purposes of the present matter.

The defendants provide no support in Nebraska law for their assertion that a more specific description of the alleged trade secret is necessary at this early stage, especially given that the Court's touchstone in considering a motion to dismiss is notice. *See Walmart, Inc. v. Cuker Interactive, LLC*, 949 F.3d 1101, 1109 (8th Cir. 2020) (concluding Arkansas law requires a party "clearly identify what information it considered to be a trade secret"). Other courts have found—under nearly identical state trade-secrets laws—that "[a] plaintiff need not allege the nature of the trade secrets with specificity at the pleading stage, but must describe them with more than conclusory statements and with sufficient information to infer more than a mere possibility of misconduct." *Am. Achievement Corp. v. Jostens, Inc.*, 622 F. Supp. 3d 749, 764 (D. Minn. 2022) (internal quotation omitted); *see also LifeScience Techs., LLC v. Mercy Health*, 632 F. Supp. 3d 949, 957 (E.D. Mo. 2022) (finding that a "trade secret may be alleged broadly" under Missouri at the pleading stage) (internal quotation omitted). Defendants admit "Rule 8 does not require Plaintiff to produce any evidence of a trade secret at this stage or to allege overly-specific details revealing its private information," but then demand more of Aksarben's complaint.

Furthermore, the Court finds it plausible that some of the Rent Manager information qualifies as "trade secrets," and defendants' motion does little to rebut Aksarben's allegations to that effect. In defendants' own words, "Rule 8 [] require[s] [Aksarben] at least allege facts establishing the plausible existence of a trade secret." Under Nebraska law, customer lists like those included in the Rent Manager information have been found to fall under the NTSA's definition of trade secrets "where time and effort have been expended to identify particular customers with particular needs or characteristics," but not where a list merely includes the "identities and locations of customers that anyone else could easily identify." *Home Pride Foods, Inc. v. Johnson*, 262 Neb. 701, 782 (Neb. 2001); *see also First Express Serv. Grp., Inc. v. Easter*, 840 N.W.2d 465, 474-75 (concluding that an allegedly misappropriated customer list was not a trade secret where it was undisputed that "simple internet searches could identify [the customers] . . . and could provide their contact information"). The Eighth Circuit has also concluded that customer lists can

9

qualify as trade secrets when they are "valuable, not because of the quantum of secret information, but because the expenditure of time, effort, and expense involved in its compilation gives a business a competitive advantage." *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011).

Defendants fail to meaningfully address Aksarben's allegations that the Rent Manager information—some of which Sorensen would not have known "but for his access and use" made possible by defendants' alleged disclosure—was compiled using "significant time and money," not "available to the general public," and "gave Aksarben a competitive advantage over those" without access to the information. Although the determination as to whether something is a trade secret is highly fact-dependent and not easily made on the face of pleadings, *see AvidAir,* 663 F.3d at 971, the present allegations plausibly support Aksarben's claim that the Rent Manager information consists of trade secrets.

Like their other arguments, defendants' exaggeration as to the lack of pleadings regarding Aksarben's secrecy measures is also without support. Aksarben's complaint alleges, in relevant part, that defendants were "required to transfer all of its electronic files to" Aksarben at closing, and that Kreis confirmed to Aksarben that defendants would no longer have access to those files after December 31, 2022. Aksarben also states it kept this information confidential and stored it on a separate, internal server to which others—including Sorensen and defendants—lacked access. While perhaps thin, these allegations are sufficient to demonstrate the fallacy of defendants' argument that Aksarben has alleged *no* protective measures taken to keep the Rent Manager information secret.

Whether or not such measures are sufficient is a different question. The Court finds defendants have not adequately refuted the sufficiency of these protections—under the factual circumstances of this case—to warrant dismissal.

Defendants cite many cases in which information was found to be a trade secret based on markers or proprietary legends placed on documents, confidentiality agreements between parties, and limited employee access to certain files—all of which seem to be, admittedly, absent here. *See*, *e.g.*, *AvidAir*, 633 F.3d at 974 ("The use of proprietary legends on documents or the existence of confidentiality agreements are frequently-considered factors in establishing or denying a trade secret claim."). What their argument fails to acknowledge, however, is that a plaintiff need only plead "[r]easonable precautions" in light of the circumstances. *See Pioneer Hi-Bred Intern. v. Holden Found. Seeds, Inc.*, 35 F.3d 1226, 1235-36 (8th Cir. 1994). Precautions that may be insufficient in some contexts to reasonably protect a purported trade secret may, for example, be sufficient in others. *Compare Softchoice Corp v. MacKenzie*, 636 F. Supp. 2d 927, 939-40 (D. Neb. 2009) (finding password protection, firewalls, and locks were "nothing more than the ordinary precautions" and insufficient to qualify information as trade secrets where the evidence demonstrated that the information was not treated as a secret), *with Home Pride*, 262 Neb. at 710 (finding non-password protected information to qualify as trade secrets where the information had "independent economic value and was kept secret").

Given the circumstances surrounding the Agreement, the defendants have not shown that the precautions Aksarben has pleaded with respect to the confidentiality of the Rent Manager information are insufficient. "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *AvidAir*, 663 F.3d at 974. In light of the apparently tight-knit nature of the companies, Kreis's confirmation that Vertical Focus no longer had access to the files, and the defendants' agreement to the covenant not to compete, the Court does not believe any more extravagant precautions need be plead by Aksarben to survive the defendants' motion to dismiss.

The defendants' final argument for dismissal pertains to whether or not Aksarben's complaint adequately alleges any misappropriation of this information. In their view, Aksarben only alleges vaguely and in a conclusory manner that Kreis transferred the Rent

Manager information to Sorensen. Further, they argue Aksarben does not allege Kreis knew such information should be kept secret given that there are no allegations she was directly informed of its secrecy nor of any confidentiality requirements.

The Court again disagrees. From Aksarben's allegations, which must be accepted as true, Kreis disclosed the Rent Manager information despite being on notice that such information was improper to obtain and disclose to others under such circumstances. Aksarben's factual allegations demonstrate an understanding between the parties that the defendants would no longer be able to access the files which, after closing, belonged solely to Aksarben and were kept confidential on its internal server. Even if Kreis retained access to this information without improper copying, the Agreement's provisions should have informed her that the information was "[a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use" in light of the covenant not to compete. Neb. Rev. Stat. § 87-502(2)(b)(ii)(B); *see also Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974) ("This necessary element of secrecy is not lost, however, if the holder of the trade secret reveals the trade secret to another in confidence, and under an implied obligation not to use or disclose it." (internal quotation omitted)).

Aksarben also alleges Kreis was "aware that Sorensen was planning to use the client lists, electronic files and the information contained in the Rent Manager database to reach out to Aksarben's clients" in an effort to interfere with its business. Given the duties of Vertical Focus and their representatives to avoid competing with or otherwise acting to the detriment of Aksarben, it would reasonably be presumed that Kreis—who signed the Agreement on behalf of Vertical Focus—could not use nor disclose the Rent Manager information for certain purposes contrary to these duties.

In sum, the defendants' oversimplified contentions that Aksarben has entirely failed to allege what is required of it under Nebraska and federal trade-secrets law fail to demonstrate that Aksarben's claims are implausible. While the contractual provisions and

factual support may not ultimately support the claims made by Aksarben, dismissal is not proper at this time.

    IT IS ORDERED:

1. The Motion to Dismiss filed by defendants Vertical Focus LLC, Wendy Kreis, and Ashlyne Svoboda (Filing No. 2) is granted in part and denied in part.

2. Plaintiff Aksarben Property Management, LLC's claims against Ashlyne Svoboda (Filing No. 1) are dismissed with prejudice.

Dated this 19th day of September 2023.

                BY THE COURT:

                Robert F. Rossiter, Jr.
                Chief United States District Judge